UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EPITOPIX, LLC,

            Plaintiff,

    v.

ZOETIS INC.,

            Defendant.

Case No.  25-mc-80083-JCS

**ORDER GRANTING MOTION TO QUASH**

Re: Dkt. No. 1

## I.    INTRODUCTION

Presently before the Court is a motion to quash ("Motion") a deposition subpoena issued in connection with a patent infringement case pending in the District Court for the District of New Jersey ("the New Jersey court"), *Epitopix, LLC d/b/a Vaxxinova US v. Zoetis Inc*., Case No. 2:23-cv-02467-BRM-JSA ("the New Jersey action"). In particular, Defendant Zoetis Inc. ("Zoetis") asks the Court to quash a subpoena issued by Plaintiff Epitopix, LLC d/b/a Vaxxinova ("Vaxxinova") to depose non-party Brandon Boss, who was previously employed as a patent attorney by Zoetis's predecessor, Pfizer, Inc. ("Pfizer").  Boss resides in California, where he is an in-house patent attorney for a large biotechnology company headquartered in Foster City, California.  For the reasons stated below, the Motion is GRANTED.[1]

## II.    BACKGROUND

### A.    The New Jersey Action

Vaxxinova initiated the New Jersey action on May 4, 2023, alleging past infringement by Zoetis of Vaxxinova's expired U.S. Patent No. 8,637,048 ("the '048 Patent").  Motion at 3.[2]

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] Zoetis has provided a description of the New Jersey action in a section of the Motion entitled "Nature and State of the Proceedings."  Motion at 3-4.  Because Vaxxinova states in its Opposition that it "agrees with Zoetis's motion to quash's recitation regarding the nature and state of the proceeding[,]s" Opposition at 3, the Court relies on Zoetis's description in this Order.

United States District Court
Northern District of California

1    According to the Complaint in the New Jersey action, "Pfizer and [Vaxxinova] had

2    negotiations regarding and entered into commercial agreements pertaining to Plaintiff's SRP®

3    technology embodied in the '048 Patent." *Id*. "The Complaint further alleges that Zoetis

4    incorporated Plaintiff's SRP® technology into its products beyond the scope of Zoetis's license

5    rights, thereby allegedly infringing the '048 Patent." *Id*.

6    On January 23, 2025, the New Jersey court issued a claim construction Opinion and Order

7    construing certain disputed terms of the '048 Patent.  *Id*. (citing New Jersey Action, docket nos.

8    89-90).  On February 21, 2025, the court entered a stipulated judgment in favor of Zoetis, finding

9    that the only remaining claims, counterclaims, and defenses pending between the parties relate to

10    Zoetis's Enviracor® J-5 products and Claims 21, 22, 47, and 50 ("Group II Claims") of the '048

11    Patent.  *Id*. Dkt. No. 99. Zoetis has asserted noninfringement and an invalidity defense based on

12    U.S. Patent No. 5,830,479 ("the '479 Patent").  Opposition at 2.

**B.    Boss's Involvement in Pfizer's Licensing of Prior Art**

13

14    Zoetis was formed in 2013, when Pfizer "spun out its Animal Health division as a stand-

15    alone company."  Motion at 2.  In 2010, before the creation of Zoetis, Pfizer and Vaxxinova

16    entered into a licensing agreement entitled Development, Commercialization and Supply

17    Agreement (the "DCSA"). Opposition at 2. According to Vaxxinova, the DCSA "related to

18    Vaxxinova's novel cattle vaccines and included a substantial patent license payment-including a

19    $5 million up-front payment, $18 million dollars in milestone payments, and a 5% royalty."  *Id*.

20    At the time the parties entered into the DCSA, Boss worked at Pfizer as an in-house

21    attorney, holding the position of Assistant General Counsel.  Motion at 5. It appears to be

22    undisputed that Boss was involved in conducting due diligence in connection with Pfizer's

23    decision to enter into the DCSA.  This is reflected in an email dated December 7, 2009, from Boss

24    to Vaxxinova's in-house attorney, David Provence, in which Boss asked Provence for additional

25    documents and information about the proposed licensing agreement.  Hirschorn Decl., Ex. C.  The

26    email also copied another Vaxxinova employee, Jim Sandstrom.  *Id*.   In his email, Boss listed the

27    following "patents/applications" he had "been told" were related to the licensing agreement: U.S.

28    Patent No. 6,432,412; U.S. Patent No. 6,027,736; U.S. Patent No. 5,830,479 (the '479 Patent);

1   U.S. Patent No. 5,538,733; U.S. Patent Application Publication No. 2003/0036639 (abandoned),

2   and U.S. Patent Application Publication No. 2003/0064073 (abandoned).  *Id.*   Provence sent a

3   detailed response on February 8, 2010.  *Id.*  Both documents were produced by Vaxxinova on

4   March 11, 2025.   Motion at 5.  On March 14, 2025, Vaxxinova also produced a redacted email

5   message from Sandstrom to Provence, sent on December 7, 2009, forwarding Boss's email to

6   Provence. Hirschorn, Ex. D.

7        **C.     The Subpoena**

8            On March 3, 2025, Plaintiff issued a Notice of Subpoena to Zoetis's counsel compelling

9   Boss's testimony via Zoom at a deposition scheduled for April 1, 2025. *Id.*, Ex. A (Notice of

10  Subpoena and Subpoena) ("Subpoena").  Zoetis's counsel demanded that Vaxxinova withdraw the

11  Subpoena, citing attorney-client privilege and the fact that "the only communications mentioning

12  Mr. Boss [were] from before the application for patent that led to the '048 patent."  *Id.,* Ex. B.

13  Vaxxinova refused to withdraw the Subpoena, taking the position that it was "entitled to discover

14  the steps Pfizer took in evaluating the portfolio" it licensed under the DCSA, which Vaxxinova

15  claimed addressed the "same technology [Zoetis] now claims is invalid."  *Id.*   The parties met

16  and conferred but were unable to resolve the dispute, Hirschorn Decl. ¶ 2, leading to the filing of

17  the instant Motion. Vaxxinova agreed to postpone Boss's deposition until the Court has ruled on

18  the Motion. Motion at 4 n. 4.

19       **D.     Contentions of the Parties**

20            **1.   The Motion**

21            In the Motion, Zoetis argues that the Court should quash the Subpoena because "(1) it

22  seeks irrelevant information, (2) it seeks privileged information, rendering it futile, (3) it seeks

23  irrelevant information that may be obtained elsewhere, and (4) it does not meet the heightened

24  standard for non-party discovery and is unduly burdensome."  Motion at 6.

25            Zoetis argues that the testimony Vaxxinova seeks from Boss is irrelevant because "the

26  patents and patent applications related to the potential due diligence project referenced in the sole

27  email authored by Attorney Boss do *not* include the '048 Patent."  *Id.* at 5 (emphasis in original).

28  Rather, Boss's 2009 email references "patents *not* asserted by Plaintiff and abandoned

United States District Court
Northern District of California

applications." *Id.* at 7 (emphasis in original).   According to Zoetis,

> The application that matured as the '048 Patent was filed on April 21, 2011, i.*e*., more than sixteen months *after* the Attorney Boss email to Mr. Provence, over a year *after* the letter from Mr. Provence to Attorney Boss, and almost one year *after* the conclusion of the negotiations that led to the DCSA.

*Id.* (emphasis in original).  Furthermore, Zoetis contends, "[t]he text of what became Claims 21, 22, 47, and 50 of the '048 Patent was not presented to the U.S. Patent Office until August 23, 2013, *i.e*., over three and a half years *after* the Attorney Boss email to Mr. Provence, over three years after the letter from Mr. Provence to Attorney Boss, and over three years *after* the conclusion of the negotiations that led to the DCSA." *Id.* (emphasis in original). Thus, Zoetis argues, any due diligence Boss may have conducted in connection with the DCSA has nothing to do with the remaining issue in the case, namely, whether Zoetis's Enviracor® J-5 product infringed one or more of Claims 21, 22, 47, and 50 of the '048 Patent. *Id.*

Zoetis argues next that the Subpoena should be quashed because it seeks communications that are protected by attorney-client privilege. *Id.* at 7-9. According to Zoetis, "[a]ny communications involving Attorney Boss, thought processes of Attorney Boss, and any documents related to Attorney Boss providing legal advice to Pfizer in the context of the alleged due diligence project are presumptively privileged." *Id.* at 8. Because there has been no waiver of that privilege, Zoetis asserts, "Attorney Boss's testimony concerning his involvement in the alleged due diligence project remains protected under the attorney-client privilege" and the Subpoena should be quashed. *Id.* at 8-9.

Zoetis also argues that the information Vaxxinova seeks from Boss can be obtained elsewhere, including from Provence, who continues to prosecute patents for Vaxxinova. *Id.* at 9. Zoetis contends "[a]ny information sought from Attorney Boss could be obtained via a 30(b)(6) deposition of Zoetis or possibly by admissions" but represents that "Vaxxinova has yet to serve a 30(b)(6) deposition notice on Zoetis or a request for admissions directed specifically to information sought by this deposition." *Id.*

Finally, Zoetis argues that the Subpoena should be quashed because it does not meet the heightened standards that apply to non-parties and is burdensome. *Id.* at 9-11. According to

United States District Court
Northern District of California

1    Zoetis, the Subpoena is also an "impermissible fishing expedition" and was not issued in good

2    faith. *Id.* at 11-12.

3              **2. Opposition**

4              In its Opposition, Vaxxinova contends it needs to depose Boss "to authenticate two

5    documents exchanged between the parties during negotiations and to understand the process Mr.

6    Boss went through to evaluate the intellectual property before Pfizer agreed to license it."

7    Opposition at 4. Vaxxinova concedes that Zoetis is "technically correct" as to its argument that

8    Boss's due diligence did not address the '048 Patent, which had not yet issued. *Id.* at 4-5.

9    Nonetheless, it asserts that the information it seeks "goes to the heart of its invalidity defense and

10   Vaxxinova's willfulness claim," which is based on its contention that the '479 Patent invalidates

11   the '048 Patent. *Id.* at 2-3. According to Vaxxinova, "Mr. Boss [ ] engaged in a robust evaluation

12   of the exact art that Zoetis now says invalidates the patent-in-suit" and "[t]his is precisely why

13   Zoetis does not want this deposition to go forward: it will reveal the crucial art it relies on was, in

14   fact, before an experienced patent attorney at a sophisticated company that, after a robust review,

15   decided to pay tens of millions of dollars for the patent Zoetis now claims is invalid." *Id.* at 2-3;

16   *see also id.* at 6 ("The true reason Zoetis seeks to quash this deposition is Mr. Boss is likely to

17   admit he is an experienced patent attorney who had the application that issued as the '048 patent in

18   front of him as well as the supposedly invalidating prior art, yet Pfizer in-licensed the very

19   technology that Zoetis claims is invalid.").

20             Vaxxinova also rejects Zoetis's claim that it is seeking privileged information, asserting

21   that it is only seeking to "explore *the process* Mr. Boss employed in evaluating the intellectual

22   property discussed in those documents that Pfizer ultimately paid tens of millions of dollars to

23   license." *Id.* at 5 (emphasis added). In support of its position, it points to the observation in *Cook*

24   *v. Fullerton Supportive Hous., L.P.*, No. 8:19-00383 PSG (ADS), 2019 U.S. Dist. LEXIS 227926,

25   *3 (C.D. Cal. Dec. 12, 26 2019) that "attorney-client privilege 'extends only to communications

26   and not to facts.'" (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)). *Id.* at 5-6.

27   Vaxxinova contends, "[s]hould any question encroach on the attorney client privilege, Zoetis's

28   counsel is free to instruct the witness not to answer.") *Id.* at 6. Vaxxinova also argues that

5

1    Zoetis's contention that Provence can provide the information Vaxxinova seeks "defies logic"

2    because Provence does not have information about the "process" used by Pfizer to evaluate

3    Vaxxinova's intellectual property.  *Id.*  Finally, Vaxxinova argues that Zoetis exaggerates the

4    burden that will be imposed on Boss given that it only seeks a deposition of two hours or less that

5    can be conducted by Zoom.  *Id.*

6           **3.   Reply**

7           In its Reply, Zoetis argues that "[t]he very statement of the purpose of the subpoena

8    demonstrates both deception and the irrelevance of the facts sought – not even mentioning yet the

9    privileged nature of the 'process.'"  Reply at 1.  Vaxxinova's position is deceptive, according to

10   Zoetis, "because the '048 Patent application did not exist in 2010 and the claims did not exist until

11   2013 (at the earliest), [and therefore] it is deceptive to even suggest that the not-yet-drafted patent

12   claims could be analyzed by Mr. Boss (or anyone) for validity or invalidity."  *Id.*  at 1-2.  In

13   support of its position, Zoetis points to Federal Circuit and Supreme Court authority that has

14   recognized that "analyses for both infringement and invalidity start at the same point –

15   determining the meaning of the asserted claims."  *Id.*  at 2 (citing *Markman v. Westview*

16   *Instruments, Inc.*, 52 F.3d 967, 996 n.7 (Fed. Cir. 1995) (Mayer, J., concurring), aff'd, 517 U.S.

17   370 (1996) ("A claim must be construed before determining its validity just as it is first construed

18   before deciding infringement."); *Trovan, Ltd. v. Sokymat Sa*, 299 F.3d 1292, 1302 (Fed. Cir. 2002)

19   ("an inventorship analysis, like an infringement or invalidity analysis, begins as a first step with a

20   construction of each asserted claim to determine the subject matter encompassed thereby.").

21   Because "no claims existed, no invalidity analysis could be performed" and Boss "cannot

22   comment on any 'process' regarding the claims in suit."  *Id.*

23          As to Vaxxinova's stated purpose of authenticating the two documents referencing Boss,

24   Zoetis represents that prior to filing its Reply it offered to stipulate to the authenticity of the

25   documents and that Vaxxinova rejected the offer.  *Id.* Zoetis further states that it "formally agrees

26   that the two documents are authentic for purposes of this litigation, which removes any need for

27   Mr. Boss's testimony on that issue."  *Id.*  at 3.

28          Zoetis rejects Vaxxinova's assertion that information it seeks would not be privileged.  *Id.*

United States District Court
Northern District of California

6

1    According to Zoetis, "the conjecture is that Mr. Boss deliberated on the specification of a patent

2    family and, in his performance as an attorney, considered the possible claims that could issue from

3    a set specification" but "[e]ven assuming all of that is true, nothing that Mr. Boss may have

4    thought or advised would be accessible via the subpoena" because "[t]he information sought

5    is clearly within the bounds of privilege[.]"  *Id.*

6         Furthermore, Zoetis asserts, "[e]ven if privilege did not apply . . . , the information sought

7    is simply not relevant."  *Id.* Zoetis reasons:

8         Vaxxinova's issued '048 Patent claims are entitled to a presumption
         of validity. Whether Mr. Boss or Pfizer performed the analysis that
9         Vaxxinova presupposes occurred in 2010 and believed through that
         presupposed analysis that valid or invalid claims existed in the then-
10        issued Vaxxinova patents (none of which are at issue here), those facts
         if proven would have no effect on the validity or invalidity of those
11        claims if subsequently challenged.

12   *Id.*  Zoetis notes that to the extent Vaxxinova may be relying on the doctrine of licensee estoppel –

13   a "judge-made doctrine that once prevented licensees from challenging the validity of patents it

14   licensed" – that doctrine was rejected by the Supreme Court in *Medimmune, Inc. v. Genetech, Inc.*

15   549 U.S. 118, 134-137 (2007).  *Id.*

16        Finally, Zoetis argues that Vaxxinova "downplays without authority the clear caselaw

17   cited in Zoetis's opening brief that recognizes that party discovery differs from discovery of

18   nonparties and that a higher burden applies to efforts to seek such discovery."  *Id.* at 4 (citing

19   *Pardi v. Tricida, Inc.*, No. 21-cv-00076-HSG (LJC), 2024 U.S. Dist. LEXIS 185594, *27 (N.D.

20   Cal. Oct. 10, 2024);  *In re Google Litig.*, No. C 08-03172 RMW (PSG), 2011 U.S. Dist. LEXIS

21   140656, *9 (N.D. Cal. Dec. 7, 2011)).

22   **III.    ANALYSIS**

23        **A.    Venue**

24        Fed. R. Civ. P. 45 states that "the court for the district where compliance is required" has

25   primary authority over all subpoena-related motions.  Because the Subpoena lists the place of

26   compliance as Foster City, California, where Boss is employed, venue is proper.

27

28

United States District Court
Northern District of California

### B. Legal Standard

Under Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure, a party seeking enforcement of a subpoena may bring a motion in "the court for the district where compliance is required for an order compelling production or inspection."  Fed. R. Civ. P. 45(d)(2)(B)(i).  Rule 45 also states that a court must quash a subpoena, upon timely motion, if it "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). "The scope of [subpoena] discovery under Rule 45 is the same as under Rule 26(b)."  *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA (JSC), 2017 WL 2929439, at *2 (N.D. Cal. July 7, 2017). Thus, motions to quash are evaluated in the context of Rule 26, which states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Although the scope of discovery under Rule 45 is the same as Rule 26(b), the "Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg L. LLC v. Hussin*, No. 16-MC-80066-JCS, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (citing *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-1967-CW-NC, 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) (citing *United States v. C.B.S., Inc.*, 666 F.2d 364, 371−72 (9th Cir. 1982))). Further, while blanket assertions of privilege are disfavored, courts have quashed subpoenas that seek disclosure of privileged material "where the issuing party fails to explain 'what non-privileged, relevant information [the witness] could offer[.]' " *Id.* (quoting *Unigene Labs., Inc. v. Apotex, Inc.*, No. C 07-80218 SI, 2007 WL 2972931, at *3 (N.D. Cal. Oct. 10, 2007); and citing *Trunk v. City of San Diego*, No. 06 CV 1597 LAB (WMc), 2007 WL 2701356, at *7 (S.D. Cal. Sept. 13, 2007) (quashing subpoena where the issuing party could at most perhaps "craft a few relevant and meaningful deposition questions that did not run afoul of" the attorney client privilege to obtain an "extremely limited amount of historical

United States District Court
Northern District of California

1    information"), objections overruled, 2007 WL 3001679 (Oct. 11, 2007)).

2        **C.    DISCUSSION**

3            This case does not present a close call.  Zoetis has stipulated to the authenticity of the two

4    documents referencing Boss.  Thus, the only remaining purpose for deposing Boss is to obtain

5    information about the "process" he used in conducting due diligence related to the DCSA.  But

6    Vaxxinova does not explain how the "process" – divorced from Boss's underlying analysis of the

7    *validity* of the intellectual property Pfizer was considering licensing—is relevant to Zoetis's

8    invalidity contentions in this case.  Even the underlying analysis Boss performed, which is almost

9    certainly protected by attorney-client privilege, has minimal relevance to Zoetis's invalidity

10   defense. At most, Boss's email to Provence suggests he may have considered whether the '479

11   Patent invalidated patents that are in the same family as the '048 Patent.  But as the '048 Patent

12   application had not been filed when Boss conducted his due diligence and the claims at issue in

13   this case had not even been drafted, the possibility that Vaxxinova will glean any relevant

14   information from Boss is entirely speculative.  As Zoetis points out, the invalidity analysis *starts*

15   with the words of the claims.  As the asserted claims in this case did not exist when Boss

16   conducted his due diligence, the information Vaxxinova seeks is unlikely to be relevant.

17           Therefore, the Court QUASHES the Subpoena on the basis that it seeks privileged and

18   irrelevant information and imposes an unjustified burden on a non-party.

19   **IV.    CONCLUSION**

20           For the reasons stated above, the Motion is GRANTED.

21           **IT IS SO ORDERED.**

22

23   Dated:  May 6, 2025

24                                                                    _____

25                                                                    JOSEPH C. SPERO
                                                                     United States Magistrate Judge
26

27

28

*United States District Court*
*Northern District of California*